One at 2283 Minnesota, Low In One Mini Golf, LLC v. Tim Walz, LLC. There we are. Very good. Mr. Dickey. Thank you, Your Honor. May it please the court. James Dickey of the Upper Midwest Law Center on behalf of the appellants in this case. In the middle of a pandemic, instead of applying equal treatment to every Minnesotan, Governor Walz picked winners and losers based on criteria with no conceivable rational relation to stopping COVID-19. As the Supreme Court conclusively held in the Tandon case, the appellants are similarly situated to big box stores that stayed open in every relevant respect related to the spread of COVID-19. And that's at page 1297 of that case. Governor Walz's discrimination was entirely arbitrary and irrational, and he and the state failed to provide any compensation to his victims, much less just compensation. These deprivations violate the Fifth and Fourteenth Amendments to the Constitution. And so we asked this court to reverse the district court by holding, one, the shutdown orders violated the Equal Protection Clause, and two, our clients can recover just compensation under the Takings Clause, both for their loss of business as a going concern and the loss of use of their property. And given that I only have 15 total minutes, I invite the court to ask any questions it deems most pertinent at this point. And then if the court does not have any initial questions, I can briefly present the most important points in my view. On the takings issue, it strikes me that Chief Justice Roberts was very clear that there has to be either an invasion or an exclusion to constitute historical physical taking, which I think is miscalled categorical. And I don't see that here. So are we really just talking regulatory taking as the issue at hand? No, Your Honor. We are talking about a physical taking or a categorical taking, however you want to call it. It certainly wasn't excluding customers. It was refusing to allow the quiet enjoyment of the property, which is one of the bundle of sticks in the bundle of property rights. So it's another side. Wait, that doesn't fit the Chief Justice's definition of what's required for physical taking. Well, Your Honor, I think it is the other side of the same coin. It's not a direct fit to Cedar Point Nursery. We agree with that. It's not an actual refusal of the right to exclude. It's a refusal of the right to include, which is the flip side of that coin. And what's your best case for that flip side argument? Because it doesn't work with me intuitively. Well, I don't have a specific case on point that directly addresses that issue. I just wanted to see if that was the case and go ahead. So these are a categorical or physical taking because number one, they stopped appellant's customers from entering their business property and two, they entirely shut down their business operations in an ongoing and continuous way and that rendered them unable to operate. And what's important here is we're talking about businesses that have lease hold interests in these properties and the only value of the business is it has a going concern essentially. So if they're not able to invite customers to their property and sell their goods, there's absolutely no economic use they can make of their property. The facts alleged in the Second Amendment complaint are clearly highlighted in red in our initial brief on page seven and the allegations of the complaint from which that chart is drawn are cited on pages four through seven and summarized by that chart and they indicate all the facts as to how our property is operating by Governor Walz's various executive orders, which are discussed therein. And so we'd also note that as a distinction, the district court and the appellees try to rely on the Tahoe Sierra case and I think that it's important to note that that case is factually distinct because a 32-month moratorium on land development where as the Supreme Court said, and I quote, property values often will continue to increase despite a moratorium, that's different in kind than the shutdown of an ongoing business enterprise, which depends on cash flow for its ongoing existence. And there's also no reciprocity of advantage for the appellants here as there was for all landowners in the Tahoe Sierra Basin in that case. So appellants in this case have borne a burden that Governor Walz's economic winners did not have to bear and that's why we see this as a categorical or physical taking. In addition, your honors, I would point out that there is a regulatory taking under Penn Central as well and as to the first two prongs of the analysis, I think it's very clear that our clients win in those issues. The economic impact of the shutdown orders only impacted businesses like appellants, which were shut down, and then this interference destroyed their reasonable expectation-backed investments and entirely put Glow-in-One Mini-Golf out of business. In fact, it's now being used as a COVID-19 testing site. Kind of ironic. On the third prong that the court analyzed that what is clear from the Penn Central case is that government actions which single out certain businesses, which are comparable to others, are not the type of government actions which can avoid the compensation requirement. And this was Justice Brennan's foil in that case from footnote 30, where he noted that the takings clause does not apply to widespread benefits created when restrictions are applicable to all similarly situated property. In this case, we've got a situation where there is no difference between our clients, as the Tandon court held, versus Target or Walmart or Walgreens or CVS, and the government just decided to shut us down and not them. On the equal protection... What's your, and this is more a class-of-one equal protection question, but what's your evidence of discriminatory? The evidence of discriminatory action? There has to be, there has to be affirmative intent to discriminate, not just disparate impact or that sort of thing, for a class-of-one equal protection claim. Well, in this case, the government shut down our clients and left open these other locations like labor union offices or bicycle shops that have, you know, no rational relation to... That's an impact argument. That's not discriminatory intent like we, like you get in some sort of atrocious zoning cases. Where you can actually find evidence of an intent to discriminate against the disfavored plaintiff. I don't see that here, but I haven't studied the record. Well, your honor, I think I don't have any specific allegations in the record. I don't think where we said that Governor Walz acted with some kind of malice or anything like that. What we've said is that he's acted arbitrarily and irrationally and that at least, and I think that the knowledge I acknowledge is now vacated, but Judge Stickman's decision in the Western District of Pennsylvania in the County of Butler v. Wolfe goes into detail on this and I think aptly summarizes why these arbitrary and irrational distinctions still satisfy the requirements under a class of one equal protection claim for the court issue. Not in a circuit law. Not in a case, I can't remember the name, but I wrote it and Justice White was on the panel in 1995 and he taught me about class of one equal protection claims. Your honor, I will take you at your word. I don't have a specific response to that. There's case law all over the map on this on this issue, but that's been my, I think that's still a circuit law. In that case, your honor, what I will do is I'll note that I have preserved the issue for any en banc appeal, but I think I still think the Eighth Circuit precedent should follow the same analysis that Judge Stickman followed. And so I would also note that I think that the cases that we cited for why even why Governor Walz's restrictions even violate the rational basis test, which we agree is applicable here. I think the Olek case, the Merrifield case, and the Craig Miles case, which we cite in our brief, are exactly why there is a need for the court to issue a declaratory judgment and injunction against this action. I want to touch on qualified immunity as well. I think that's an issue that the appellees have raised and the district court found that Governor Walz had qualified immunity in this situation. And the problem with the qualified immunity analysis, and Judge Willett from the Fifth Circuit has aptly stated this in a recent dissent from a denial of rehearing en banc in Ramirez v. Guadarrama, 2nd F. 4th 506 at page 523, is that to put the level of abstraction here at whether or not there has ever been COVID-19 before makes it way too narrow. What the level of abstraction the court should analyze for purposes of qualified immunity analysis is, is there an emergency that has occurred that leads the government to make the decisions that it has Justice Holmes himself said 100 years ago now, that it's always going to be some sort of exigency that the state is regulating against. So what the court should look at in terms of whether or not just compensation can be awarded under the qualified immunity precedent is simply, is there clearly established that just compensation can be paid based on emergency actions? And I think the Kimball-Laundrie case, the Petty Motors case, and the General Motors cases from the U.S. Supreme Court, amply support that even in the greatest emergency that's faced our country in the last 175 years in World War II, that just compensation is still awardable to those who have had the government take their property. And again, we get back to whether or not there was a physical taking and whether or not there is a regulatory taking to justify that, which I've already gone into. I wouldn't think that if there was a regulatory taking or a physical taking, that you would not be able to recover because of qualified immunity. Why do they come together? Why does the governor have to have personal individual damage liability if the state has taken? Are you just talking about your other claims? Well, I'm talking about the claims against the governor in his individual capacity where he was dismissed. In terms of his claims against him. Yeah, but is that, in a lot of cases, if there's 10th Amendment immunity of all the institutional defendants, then if qualified immunity ends individual capacity liability, then the plaintiff is zeroed out, so to speak. But is that the case here? Why does the governor have to write a check if you prevail on the takings claim? Well, your honor, I believe that in terms of how the district court viewed this case, it viewed the takings claims against the governor in his individual capacity as the only claims for money damages. And that is why the qualified immunity analysis matters. Then that's bad pleading, isn't it? Potentially, your honor. I'm happy to have the state be the defendant to carry that burden. Well, you can't switch now. You brought the claim against the governor. That's true. And qualified immunity was granted. So we have to consider it that way, I think. I think you're right, your honor. And that gets back to judge Loken. You don't have a clearly established case that would say this is a categorical taking or I think you said that earlier. Your honor, what I have is a clearly established case in the World War II era cases where there was just compensation awarded. Right, right. No, I understood that point, but I'm saying you first have to show it that it's clearly established that this was a taking in the first place. I'm not sure I understand the question, your honor. Well, under qualified immunity law, you have to show that there was a violation of a clearly established right. So wouldn't it follow that you have to show the law was clearly established that what happened here was a taking? I'd have to show that it's clearly established that what happened  and analysis. And again, that's why I go back to the World War II cases where it is clearly established that just compensation would be paid as a result of the government taking those properties. Yeah, but there was no dispute there that there was a taking. And here there's a dispute whether there was a taking. So I just think your World War II case answer is skipping over the first question as to whether there's a taking at all. I understand your point, your honor. And I do think though that the fact that the government in those cases did not even dispute that there was a taking indicates that it's that obvious that there was a taking. Let me rephrase that. The government position in those cases to argue about whether just compensation was awardable and not disputing that a taking has occurred indicates that where an emergency like World War II or exists that taking has happened. And I'm well into my rebuttal time. So I will reserve the rest for rebuttal unless the court has further questions right now. Very good. Ms. Kramer. Thank you, your honor. May it please the court. My name is Liz Kramer and I'm Minnesota Solicitor General. This court should affirm the district court's dismissal of the business plaintiff's claims because A, their equal protection claims are moot and B, the governor is entitled to qualified immunity from their takings claim. Beginning with the mootness, your honors, this equal protection claim meets every definition of mootness. The executive orders. Capable of repetition is the obvious problem with the mootness or the where the rubber hits the road on mootness here. So let's not start with meets every definition of mootness because that's kind of a defense or an exception. Your honor, let's get to the point. I would love to get to the point. I was just saying capable of repetition is an exception in here. We meet that baseline definition of mootness. And so we have to only look at those exceptions. When looking at that capable of repetition yet evading review exception, this court's recent decision in House v. Page is precisely on point. There, the court said that unless the plaintiffs could show that there was a reasonable expectation that the government would issue the same kind of orders, the claims were moot. Here, there is no reasonable expectation. These executive orders have been received. Counselor, with everything that's going on with this pandemic, I don't understand how you can say that with a straight face. I mean, what variant is next? And what's its public health impact going to be? Your honor, as you know. And what's the state or the governor's response going to be? Nobody thought Omicron was going to happen. Oh, we were all done, you know, last fall. And then we had more shutdowns and more restrictions when Omicron hit. Well, what if we get to Rho or Sigma or, you know, whatever the next variant is called? Judge Loken, the points about the recent surges based on the different variants actually wholly supports my position that that exception does not apply because if you look at what happened during the Omicron surge, which just happened last month in January, what's most notable is that Governor Walz did not issue any statewide executive orders. He did not reissue a peacetime emergency. In fact, he let the local communities deal with that surge. And the same is true, even if the Delta surge that hit in the fall of last year of 2021. Again, the governor had already ended the peacetime emergency, had rescinded all of the COVID related executive orders, and did not reenact any of those in the face of that Delta variant last fall. So both of those are strong indicators that there's no reasonable expectation here that the governor would reenact both the peacetime emergency and the exact type of executive orders of which these business plaintiffs complain. And I would just note that even after the House v. Page decision, this court has issued both the Young America's Federation v. Kaler decision and the Ness v. City of Bloomington, where the court used even stronger language than reasonable expectation. Let's move on. Let's move on. Why are the takings claims moot? The takings claims are not moot, Your Honor, because they ask for damages. So on that, I would ask the court to, I think the easiest way to affirm dismissal is on the qualified immunity front. Here, there is no precedent that clearly established that limiting the public's access to a retail establishment for a matter of weeks constituted a taking, such that Governor Walz should have been, you know, reasonably on notice that that was a constitutional violation. And in opposing counsel's argument, he essentially acknowledged that that was true. So without any clearly established rule, there simply is no basis to You may have done this research. Have you found any regulatory takings cases where the qualified immunity came into play and how was it ruled? Your Honor, I have to say I haven't parsed that in my head exactly. That's a multi-factor analysis. The existence of the doctrine is clearly established, but that's true and that doesn't resolve qualified immunity in many contexts. So how would you apply it to the Penn Central regulatory takings analysis? Now I understand your question better, Judge Logan. What I would say is that all courts around the country have applied that third factor of Penn Central to say that there is no takings here. And again, you would have to hold the other way to say that. Then they don't read Penn Central the way I do. Be that as it may, to find that it was clearly established that this was a regulatory taking that somehow entitled a business plaintiff to just compensation from the governor. You would have, appellants would have to find a case that said that the governor's police powers do not extend to, again, limiting the public's access to a retail establishment during a pandemic. And there is no case like that. Instead, all the cases that look at that third factor of Penn Central the character of the government regulation, say that traditional police powers are retained. And the Penn Central analysis doesn't turn those traditional police powers into a compensable taking. Well, they do if the first two factors are bad enough. Even then, Your Honor, if you look back, for example, at the, you they say started it all from the Supreme Court, the one about the brewery, right, where the company had built the brewery and then the state decided that all production of alcohol was illegal. And the U.S. Supreme Court looked at that and said, you know, that is within the prohibition of that use of the property. And so I think with that and the Tahoe Sierra case where the U.S. Supreme Court said that the 32-month moratorium was not sufficient, that there's no way to find that qualified immunity does not apply here and protect Governor Walz from the takings claim. And unless there are further questions from the court, the appellees ask you to affirm the district court's dismissal of both the equal protection claim and the takings claim. And I yield the rest of the time to the court. All right.  Let's see, Mr. Dickey, you have some time. We'll make it, I'll make it a minute and a half. Thank you, Your Honor. Much appreciated. I will just jump right into the mootness issue that there was a back and forth on that in the previous argument portion. As it relates to the House versus Page case, which Judge Colleton wrote on a mootness issue, I think it's important to note, as we've said in our 28-J citation that, and in our brief, in our reply brief, that in the House versus Page case, you're dealing with a situation where the state has affirmatively overruled the city of St. Louis's ability to actually make any kind of law. So they're actually handcuffed and they can't do anything. So, of course, the case is moot. And in the Young America Foundation case that Judge Shepard wrote, I think that we're dealing with the University of Minnesota in that case where they had actually enacted a very detailed subsequent policy that overrode the prior policy that the Young America Foundation and Ben Shapiro and company had objected to. So I think that those are fairly distinct cases. And in this case, with the way that Chapter 12 of the Minnesota Statutes is designed, Governor Walz can do what he has done and what he has stated in a number of different cases. He can declare an emergency based on his ipse dixit that he just says this is an emergency and therefore I'm declaring it and can impose whatever kind of restrictions that he wants. So we think this case is very different from those cases that the appellees have cited and so that mootness wouldn't apply. And the best case in that situation, I know it's been vacated and we'll get that out in their 28J citation, but I think the best case is the Resurrection School versus Hertel case from that Sixth Circuit panel that was vacated for en banc appeal. I think that is the most persuasive and compelling argument as to why this case is not moot. And I think I'm out of time and I ask the court again to reverse the district court. Thank you, counsel. Case is thoroughly briefed and well-argued. Argument has helped as ever. Wish we could do it in person because I think that's even more, even a better dialogue. But this gets it done. Case is under trial.